UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

RICHARD JOSEPH KING,

Petitioner,

v.

DAVID CRIST, Warden,

Respondent.

Civil File No. 00-1170 (ADM/FLN)

**REPORT AND RECOMMENDATION**

Richard Joseph King, Petitioner, pro se.

Linda K. Jenny, Assistant County Attorney, Hennepin County, Minnesota, for Respondent.

THIS MATTER is before the undersigned United States Magistrate Judge on Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254. (Docket No. 1.) Respondent has filed a return contending that the petition should be denied on the merits. (Docket Nos. 7 and 8.) The matter has been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons stated below, it is recommended that the petition for writ of habeas corpus be denied and that this action be dismissed with prejudice.

## I. BACKGROUND

Petitioner is challenging his 1998 state court convictions for two counts of attempted first degree murder, two counts of first degree burglary, four counts of kidnapping, one count of first degree assault, and three counts of second degree assault. His convictions stem from a series of events that occurred on October 22, 1997. The Minnesota Court of

FILED 9-25-00
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Appeals has summarized those events as follows[1]:

> "During the early morning hours on October 22, 1997, appellant Richard Joseph King shot out a sliding-glass door and broke into the home where his ex- girlfriend Susan Bard was living with her 10-year-old son, J.B. J.B.'s paternal grandmother, Joyce Erling, and great-grandmother, Dorothy Clapp, were also staying at the home. Bard heard the noise from a second-floor bedroom and went to investigate. King met her and forced her at gunpoint back into the master bedroom where she and J.B. had been sleeping. King then kicked in the door of the bedroom where Erling had been sleeping, hit her in the back of the head with the gun, and took her to the master bedroom. Clapp, who had been sleeping in a bedroom on the first floor, heard the commotion and went upstairs to investigate. King forced her into the master bedroom with the others.
>
> Erling attempted to grab King's gun but was unsuccessful. King asked whether Erling believed the gun was loaded, stepped toward Bard, and shot her in the head. King then tore Bard's nightshirt off, dragged her toward the hallway, and left her lying on the floor. King later moved everyone, including Bard, into the bathroom. King beat holes into the bathroom walls with the butt of the gun, broke a mirror, and continued to threaten everyone. After several hours, Erling agreed to write a note for King, stating that Bard was shot accidentally while Erling and King struggled over the gun. Erling then convinced King to let her take J.B. and Clapp out to a car to warm up. Erling, J.B., and Clapp got into the car, drove away, and contacted the police. After they left, King put Bard into one of the Bard family's cars and began driving toward Wisconsin. Along the way, he stopped and asked a pedestrian for directions to LaCrosse. Noticing that King was wearing a jacket and no shirt and that Bard was naked, the pedestrian called the police. King was eventually stopped and arrested."

State v. King, No. C5-98-1518 (Minn.App. 1999), 1999 WL 63207 (unpublished opinion) at * 1, rev. denied, Nov. 17, 1999.

Following his conviction for the various offenses noted above, Petitioner was sentenced to 520 months in state prison.

---

[1] Petitioner has adopted the Court of Appeals' statement of facts, apparently verbatim, in his own memorandum in support of his petition. ("Memorandum," [Docket No. 2], pp. 2-3, ¶ 5.)

Petitioner's attorneys filed a direct appeal on Petitioner's behalf, which raised the following claims: (1) that the trial court erred by allowing the prosecution to present evidence of two prior assaults committed by Petitioner; (2) that the trial court committed sentencing error in connection with the two kidnapping convictions; and (3) that the trial court committed sentencing error in determining Petitioner's aggregate sentence for his various convictions. Petitioner also filed his own pro se brief that raised several additional claims, including: (1) that the trial court committed additional sentencing errors beyond those identified in appellate counsel's brief; (2) that the trial court erroneously prevented Petitioner from presenting expert testimony regarding the effects of various drugs Petitioner had taken; (3) that appellate counsel had pursued a direct appeal in violation of Petitioner's wishes; (4) that Petitioner had been denied effective assistance of counsel; and (5) that the trial court had erroneously excluded a jury instruction on voluntary intoxication.

The Court of Appeals reduced Petitioner's aggregate sentence from 520 months to 480 months, but affirmed his various convictions and sentences in all other respects. Thereafter, the Minnesota Supreme Court denied Petitioner's request for further review.

On May 8, 2000, Petitioner filed his present application for federal habeas corpus relief under 28 U.S.C. § 2254. The instant petition lists a single claim for relief, described as "denial of effective assistance of counsel." (Petition, p. (5), ¶ 12.A.) In his memorandum in support of his petition, Petitioner claims that "his counsel's failure (both at trial and then on direct appeal) to discover and present significant mitigating evidence violated his right to the effective assistance of counsel." (Docket No. 2, p. 4, ¶ 10.) He

further contends that

> "The record establishes that counsel failed to prepare, to uncover extensive records graphically describing Petitioner's nightmarish mental state, to introduce available evidence that Petitioner was borderline mentally retarded because of his extensive alcohol and drug use, and is least likely to act violently, dangerously, or provocatively."

(Id., pp. 4-5, ¶ 12.)

Respondent acknowledges that Petitioner has presented his ineffective assistance of counsel claims to the highest available state court, and that his claims were denied on the merits. Therefore, Petitioner has exhausted his state court remedies, and he is entitled to a decision on the merits here.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standards that govern this Court's review of habeas corpus petitions filed by state prisoners. The relevant portion of the AEDPA, 28 U.S.C. § 2254(d), provides that:

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal

district courts. The Court pointed out that

> "a state-court decision can be 'contrary to' this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a conclusion opposite to ours."

Id. at 1519 (emphasis added).

> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

Id. at 1523.

The Court further explained that

> "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.... [¶] [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

Id. at 1521-22 (emphasis added).

A writ of habeas corpus may also be available where the state courts' resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be granted if the conviction is based on findings of fact that are not reasonably supported by the evidentiary record. When reviewing a state court decision, however, "a federal court... presumes that the state court's factual determinations

are correct," and that presumption "may be rebutted only by clear and convincing evidence." Lee v. Gammon, No. 98-2363 (8th Cir. Aug. 11, 2000) 2000 WL 1133834 at *1.

Thus, this Court is not free to conduct its own de novo review of a prisoner's constitutional claims. Habeas relief cannot be granted unless the prisoner has identified, and substantiated, a specific error committed by the state courts. Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in Williams.

## III. DISCUSSION

In this case, the only state court discussion of Petitioner's ineffective assistance of counsel claim appears in the Minnesota Court of Appeals' decision on his direct appeal. Citing Strickland v. Washington, 466 U.S. 668 (1984), the Court of Appeals correctly ruled that a prisoner who claims ineffective assistance of counsel must show (1) that his attorney's performance "fell below an objective standard of reasonableness," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." King, 1999 WL 639207 at *5, quoting Gates v. State, 398 N.W.2d 558, 561 (Minn. 1987) and Strickland, 466 U.S. at 688, 694.

The state court's citation to Strickland clearly demonstrates that the proper legal standard was applied to Petitioner's ineffective assistance claims. Furthermore, Petitioner has not cited any U.S. Supreme Court decision, involving facts that are "materially indistinguishable" from the facts of record here, in which an ineffective assistance claim was upheld. Thus, it cannot be said that the state court decision on Petitioner's ineffective assistance claim is "contrary to" established federal law for purposes of § 2254(d)(1). See

Williams, 120 S.Ct. at 1520 (when a state court applies a Strickland analysis to an ineffective assistance claim, the court has acted in accordance with -- not contrary to -- established federal law); see also id. at 1525 (Rehnquist, C.J., concurring in part and dissenting in part) ("[g]enerally, in an ineffective-assistance-of-counsel case where the state court applies Strickland, federal habeas courts can proceed directly to 'unreasonable application' review").

Petitioner has also failed to show that the State Court of Appeals' decision involves either (i) an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," (§ 2254(d)(2)), or (ii) an "unreasonable application of clearly established Federal law" to the facts of the case, (§ 2254(d)(1)). As discussed more fully below, the Court of Appeals could not have committed either of those two errors, because Petitioner did not present any evidence to that court (or any other court) to consider.

In his state court appeal, Petitioner argued that "[t]rial counsel failed to properly advocate for [him] at the sentencing hearing... by allowing the State and the trial court to impose impermissible sentences."[2] He did not explain, however, why his sentences supposedly were "impermissible," or what, specifically, his attorneys should have done differently. He also argued that his "[t]rial counsel failed to interview the victim and witnesses named in the complaint and discovery provided by the State, or undertake any other investigation into the allegations of the October 22, 1997 complaint." He has offered no reason to believe, however, that interviewing the victim or other witnesses would have

---

[2] The ineffective assistance of counsel claims that Petitioner raised in his state court appeal are set forth at pp. 17-18 of the "Appellant's Pro Se Supplemental Brief," which is included in the state court record submitted by Respondent. (Docket No. 8.)

yielded any exculpatory evidence or undermined the substantial evidence of his guilt. Petitioner did specifically argue in his state court appellate brief that his trial counsel "failed to interview a witness by the name of 'Tammi' who worked as a bar tender at the bar called 'Shorty's and Wag's," and that Tammi would have "provided exculpatory evidence rebutting the prosecutor's assertion and theory of the case." However, Petitioner provided no hint as to what Tammi the bartender might have told his attorneys if they had interviewed her, or how her testimony could have affected the outcome of his trial.

Petitioner also criticized his attorneys for not obtaining a blood test, which purportedly would have shown that he was "sick from methadone withdrawal," and that he "hardly remember[ed] anything" about his crime because he had been "doing cocaine, methadone, booze, xanax and... ritalin." It is difficult to understand this criticism, because the jury was fully informed of the fact that Petitioner had ingested drugs and alcohol before and during the commission of his crimes. (Trial transcript, [Docket No. 8], Vol. VII, pp. 154-58.[3]) Petitioner has not explained why he believes that a more thorough investigation of his drug and alcohol intake would have changed the outcome of his trial.

Petitioner also accused his attorneys of failing to advise him of a plea offer allegedly made "in a fleeting communication for few seconds at counsel table during trial." If the prosecution did offer a bona fide plea bargain, then that obviously should have been

---

[3] Respondent represents that "extensive evidence of Petitioner's intoxication and drug use was presented at Petitioner's trial," and that "Petitioner's attorney did seek to have an expert witness testify about the effects of drugs and alcohol in Petitioner's case." (Respondent's Return, [Docket No. 7], p. 5, citing Trial Transcript Vol. III, pp. 107-41; 145-63, and Trial Transcript Vol. IV, pp. 20-23.) Petitioner has made no effort to refute that assertion.

passed along to Petitioner. However, Petitioner has provided no information about the nature of the alleged plea proposal or the circumstances surrounding it, and, more significantly, he has offered no reason to think that he would have accepted it. Thus, his plea bargain argument, like the rest of his ineffective assistance arguments, is merely conclusory.[4]

In his direct appeal, Petitioner argued that he had been deprived of a suitable opportunity to present evidence in support of his ineffective assistance claims, because he had not been allowed to voluntarily dismiss his appeal (presumably without prejudice) and litigate his ineffective assistance claims in a post-conviction motion to the trial court. That argument might be taken more seriously if Petitioner had ever attempted to show that he actually could have presented evidence in a post-conviction proceeding to support his ineffective assistance claims. In fact, however, Petitioner has never even attempted to identify any specific evidence that he might be able to produce in support of his ineffective assistance claims. While Petitioner is not required to prove his claims in documentary

[4] Even in his present application for habeas corpus relief, Petitioner still has offered nothing more than conclusory assertions. He broadly contends that his trial counsel "fail[ed] to introduce the comparatively voluminous amount of favorable evidence," but he has not specifically identified any such evidence. He accuses his attorneys of failing to "uncover extensive records graphically describing Petitioner's nightmarish mental state;" but he has not identified any such records, he has made no effort to show that any such records would have been relevant and admissible at trial, and he has not explained why he believes that the introduction of any such records probably would have changed the outcome of his case. He also asserts that he received, and was prejudiced by, "unprofessional service" of his legal counsel, because his attorneys allegedly failed to present certain exculpatory evidence that "would have supported Petitioner's theory that [one of the victims] was shot by accident and would have established his [Petitioner's] credibility." But again, Petitioner has made no effort to identify the allegedly exculpatory evidence to which he has alluded.

submissions to the courts, he must at least identify and describe some specific evidence that he thinks would support his claims if he were given a chance to present it. He has cited no such evidence, however, either here or in the state courts.

Based on a careful review of Petitioner's brief on direct appeal, this Court concludes that the Minnesota state courts were not called upon to resolve any disputed issues of fact pertaining to Petitioner's ineffective assistance of counsel claims, because Petitioner never presented -- or even mentioned -- any specific evidence that created a factual issue relating to such claims. Because no disputed issues of fact relating to Petitioner's ineffective assistance claims were presented to the state courts, they could not have made any unreasonable factual determination(s) relevant to such claims. Likewise, the state courts could not have misapplied the law to the facts, because there simply were no facts to which a Strickland analysis could have been applied. Without having any relevant facts to consider, the state courts could not have made an objectively unreasonable application of the relevant law to the facts of the case. Thus, Petitioner cannot be granted a writ of habeas corpus pursuant to either the "unreasonable determination of the facts" clause in § 2254(d)(2), or the "unreasonable application of clearly established Federal law" clause in § 2254(d)(1).

In sum, habeas corpus relief cannot be granted based on conclusory allegations such as those offered by Petitioner here. Wiggins v. Lockhart, 825 F.2d 1237, 1238 (8th Cir. 1987), cert. denied, 484 U.S. 1074 (1988). See also Sanders v. Trickey, 875 F.2d 205, 210 (8th Cir.) ("nothing could encourage a proliferation of ineffectiveness of counsel claims more than to permit an accused to establish the prejudice prong of Strickland on

a showing of nothing more than speculation that he had been prejudiced by his counsel's performance"), cert. denied, 493 U.S. 898 (1989). Thus, the Court concludes that Petitioner's ineffective assistance of counsel claims must be rejected, and that his application for a writ of habeas corpus must be denied.

## IV. RECOMMENDATION

Based upon the foregoing and all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT:**

1. Petitioner's application for a writ of habeas corpus, (Docket No. 1), be **DENIED**; and

2. This action be **DISMISSED WITH PREJUDICE**.

DATED: September 22, 2000

FRANKLIN L. NOEL
Chief Magistrate Judge

Under D.Minn. L. 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by 10-11-00, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Court of Appeals.